IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ANNA BREITHAUPT** | : | |
| 5963 Belmont Ave. | : | |
| Cincinnati, OH 45224 | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:23-cv-71 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| **CHILDREN'S HOSPITAL MEDICAL** | : | |
| **CENTER d/b/a CINCINNATI** | : | |
| **CHILDREN'S HOSPITAL** | : | |
| 3333 Burnet Ave. | : | |
| Cincinnati, OH 45229 | : | |
| | : | **Jury Demand Endorsed Herein** |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Anna Breithaupt ("Plaintiff") and proffers this Complaint for damages against Children's Hospital Medical Center d/b/a Cincinnati Children's Hospital ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Hamilton County, Ohio.

2. Defendant Children's Hospital Medical Center d/b/a/ Cincinnati Children's Hospital is an Ohio corporation for non-profit doing business in the Southern District of Ohio.

3. At all relevant times, Plaintiff was an employee as that term is defined by the Ohio Civil Rights Act R.C. § 4112, and the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA").

4. Defendant is an "employer" as defined by the Ohio Civil Rights Act, R.C. § 4112 and 42 U.S.C. §12101, *et seq*.

## JURISDICTION AND VENUE

5. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

6. This action is brought pursuant to the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA"), the Ohio Laws of Discrimination, R.C. Chapter 4112 ("Chapter 4112"), and 28 U.S.C. §1331. This Court's jurisdiction is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that Plaintiff performed her job duties in the Southern District of Ohio, at which all of the events in question took place.

8. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of his Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A".

## FACTUAL BACKGROUND

9. Plaintiff began working for Defendant on or about July 11, 2022 as a Social Worker I.

10. Plaintiff is disabled, and she notified Defendant of her disabilities on paperwork during the hiring and onboarding process in June and July 2022. Plaintiff disclosed her disabilities of PTSD and ADHD to Defendant.

11. After being hired, Plaintiff entered into the onboarding process with onboarding agent Taylor Baggett. On June 27, 2022, Plaintiff emailed Baggett about her disabilities, and requested reasonable accommodations to ensure her disabilities could be accommodated immediately upon beginning work with Defendant.

12. Specifically, Plaintiff requested A) weekly check-ins with her supervisor to update her on progress/performance, B) one-hour virtual therapy appointments twice a month with her therapist, and C) a computer blue light protector/device to reduce eye strain resulting from a neuro-visual disorder.

13. Plaintiff explained that she planned to schedule her virtual therapy appointments concurrently with her 30-minute lunch break, therefore needing only one hour per month to have virtual appointments with her therapist.

14. In another instance, Plaintiff also requested time for once-monthly remote check-ins with her psychiatrist, to occur on her lunch break.

15. On July 11, 2022, Plaintiff sent the same requests via email to her direct supervisor at the time, Sondra Weingartner.

16. In or around the week of July 11, 2022, Plaintiff was granted three out of four accommodation requests. Plaintiff was granted weekly check-ins with her supervisor, a blue light protector for her computer and time and a private space for remote check-ins with her psychiatrist once a month.

17. However, Defendant denied Plaintiff's request for twice-monthly virtual appointments with her therapist.

18. Ms. Weingartner informed Plaintiff that the appointments could not be accommodated by Defendant due to the scheduling conflict with working hours.

19. Ms. Weingartner first informed Plaintiff of the denial before Ms. Weingartner went on medical leave. Prior to going on medical leave, Ms. Weingartner was aware of Plaintiff's disabilities.

20. Shortly after Plaintiff requested accommodations from Ms. Weingartner during the week of July 11, Ms. Weingartner provided feedback to Plaintiff that she came across as distracted, not listening, and asking too many questions.

21. At that point, Plaintiff explained that one of her disabilities is ADHD, and the feedback from Ms. Weingartner reflected some stereotypical symptoms of ADHD. Plaintiff was upset with the feedback because she worked hard to maintain the symptoms of ADHD, and the feedback felt more personal than constructive.

22. Upon Ms. Weingartner's leave, Plaintiff began reporting to Weingartner's direct supervisor, Laura Monhollen.

23. Plaintiff addressed the denial of the accommodation with Ms. Monhollen, who reiterated that the appointments could not be accommodated by Defendant because they occurred in the middle of a workday. Ms. Monhollen denied her request and informed Plaintiff that she needed to attend her therapist appointments outside of working hours.

24. Defendant's refusal to accommodate Plaintiff's request made it impossible for Plaintiff to continue treatment with her therapist because her therapist's working hours conflicted with Defendant's working hours.

25. Plaintiff explained this predicament to Ms. Monhollen when Ms. Monhollen denied her request. Plaintiff explained that she would have to find a new therapist.

26. On or about August 29, 2022, Ms. Monhollen provided negative feedback to Plaintiff accusing her of aggressive advocacy and violating boundaries. The feedback occurred as

a result of Plaintiff's suggestion to be mindful of sexual assault when treating a minor patient. Plaintiff explained how she came to make the suggestion, and disagreed that such a suggestion was aggressive or a violation.

27. Ms. Monhollen then accused Plaintiff of violating boundaries when she agreed with a parent that the placement of a child in a nursing home was not appropriate.

28. During this conversation, Ms. Monhollen also accused Plaintiff of being unfit to work in the medical field. Ms. Monhollen suggested that Plaintiff should contact the company's Employee Assistance Program ("EAP") for support. The conversation ended with Ms. Monhollen escorting Plaintiff off the unit.

29. Upset by the interaction with Ms. Monhollen on August 29, Plaintiff decided to take a personal day off work on August 30, 2022, which she communicated to Ms. Monhollen via text message.

30. Additionally, Plaintiff informed Ms. Monhollen that she reached out to HR and planned to contact the EAP regarding her accommodation requests and search for a new therapist.

31. Ms. Monhollen subsequently terminated Plaintiff on the same day.

32. Ms. Monhollen's reason for termination was that Plaintiff "is unfit for work" and "unsafe," and as a result, Plaintiff was deemed to have failed her probationary period and is considered ineligible for rehire.

33. After Plaintiff was terminated, she reached out to Ms. Monhollen and HR to request confirmation of her termination in writing.

34. One week later, HR responded to Plaintiff and claimed that she was removed from the schedule due to concerns about her ability to function safely in the workplace and requested Plaintiff to complete an Employee Return to Work Certificate.

35. Defendant did not initiate the fitness for duty process until one week after it terminated Plaintiff.

36. In sum, Defendant tried to "unring the bell" by claiming Plaintiff had simply been removed from the schedule, unbeknownst to her. Plaintiff never indicated that she could not work. She simply took one PTO day after an extremely upsetting interaction with her direct supervisor, who unreasonably denied Plaintiff 1-2 hours a month for virtual therapy appointments.

37. Defendant has not provided any objective examples of Plaintiff's conduct that would make her unfit for duty.

38. Defendant's request that Plaintiff participate in the fitness for duty process in response to her request for one PTO day is discriminatory and retaliatory.

39. Defendant cannot articulate a legitimate, non-discriminatory reason for Plaintiff's termination.

40. The proffered reasons for Plaintiff's termination are pretextual.

**COUNT I**
**Disability Discrimination – R.C. §4112**

41. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

42. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

43. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A)(13) of the Ohio Revised Code.

44. Defendant knew Plaintiff was disabled and/or regarded her as disabled.

45. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disability because Plaintiff disclosed her disabilities to and requested accommodations from Taylor Baggett, Ms. Weingartner, and Ms. Monhollen.

46. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her employment because of her medical condition, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

48. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
**Disability Discrimination – Americans with Disabilities Act**

49. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

50. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, *et seq.*, and as defined in 42 U.S.C. § 12101.

51. Plaintiff is an otherwise qualified individual with a disability.

52. Plaintiff was qualified for the position, with or without a reasonable accommodation.

53. Plaintiff suffered an adverse employment decision when Defendant terminated her on or about August 30, 2022.

54. The circumstances give rise to an inference of unlawful discrimination, or a nexus exists between the adverse action suffered and Plaintiff's disability.

55. Defendant took discriminatory and retaliatory action against Plaintiff based on her disability when it terminated her and then requested that she participate in the fitness for duty process simply because she took a PTO day to search for a new therapist whose schedule fits with the parameters Defendant set for Plaintiff's therapy appointments to occur outside of business hours.

56. Defendant's termination of Plaintiff violated the ADA because Plaintiff has two diagnosed disabilities, and Defendant terminated her when Plaintiff requested a day off to search for a new therapist to treat those disabilities. Defendant then requested Plaintiff to participate in the fitness for duty process after it already terminated her.

57. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

58. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## COUNT III
### Failure to Accommodate – R.C. § 4112.02

59. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

60. At all times herein, Plaintiff suffered from an impairment within the meaning of R.C. § 4112.01.

61. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. § 4112.01.

62. Defendant knew or had reason to know Plaintiff suffered from a disability or regarded her as disabled.

63. Plaintiff requested reasonable accommodations for her disabilities when she sought, among other things, twice-monthly virtual appointments with her therapist.

64. Plaintiff's request was reasonable because much of the time spent in the virtual appointments could have coordinated with Plaintiff's personal lunch break.

65. Such reasonable accommodations were possible for Defendant to provide.

66. Defendant violated R.C. § 4112.02 by failing to accommodate Plaintiff's disability and by terminating Plaintiff for issues related to her disabilities.

67. Defendant violated R.C. § 4112.02 by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disabilities.

68. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, conditions and privileges of employment for which Defendant is liable.

69. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

**COUNT IV**
**Failure to Accommodate – Americans with Disabilities Act**

9

70. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

71. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, et seq., and as defined in 42 U.S.C. § 12101.

72. Plaintiff is an otherwise qualified individual with a disability.

73. Defendant knew or had reason to know Plaintiff suffered from a disability or regarded her as disabled.

74. Plaintiff requested reasonable accommodations for her disabilities when she sought, among other things, twice-monthly virtual appointments with her therapist.

75. Plaintiff's request was reasonable because much of the time spent in the virtual appointments could have coordinated with Plaintiff's personal lunch break.

76. Such reasonable accommodations were possible for Defendant to provide.

77. Defendant violated 42 U.S.C. § 12112 by failing to accommodate Plaintiff's disabilities and by terminating Plaintiff for issues related to her disabilities.

78. Defendant violated 42 U.S.C. § 12112 by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disabilities.

79. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, conditions and privileges of employment for which Defendant is liable.

80. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT V
### Retaliation – R.C. §4112.02

81. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

82. Plaintiff engaged in a protected activity by requesting reasonable accommodations for her disabilities.

83. Defendant knew Plaintiff engaged in a protected activity.

84. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, refusing her reasonable accommodations, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VI
### Retaliation – Americans with Disabilities Act

87. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

88. Plaintiff engaged in a protected activity by requesting reasonable accommodations for her disabilities.

89. Defendant knew Plaintiff engaged in a protected activity.

90. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, refusing her reasonable accommodations, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

91. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

92. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Jamie R. Bailey*
Jamie R. Bailey (0099789)
(*Jamie@thefriedmannfirm.com*)
Peter G. Friedmann (0089293)
(*Pete@thefriedmannfirm.com*)
Rachel Sabo Friedmann (0089226)
(*Rachel@thefriedmannfirm.com)*
**The Friedmann Firm LLC**
3740 Ridge Mill Dr.
Hilliard, OH 43026
614-639-6477 (Phone)
614-737-9812 (Fax)

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Jamie R. Bailey*
Jamie R. Bailey (0099789)